IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHAEL LEE STROPE,
aka GORDON EUGENE STROPE,

                    Plaintiff,

                                        CIVIL ACTION
          vs.                           No. 05-3464-SAC

DAVID R. McKUNE, et al.,


                    Defendants.


MEMORANDUM AND ORDER

     This matter is before the court on a civil rights action
filed pursuant to 42 U.S.C. § 1983 by a prisoner in state
custody.  Following an initial screening, the court dismissed
two defendants and certain counts and directed a response on the
remaining issues: insufficient heat, access to religious
callout, retaliatory drug testing, the provision of a Kosher
diet, and retaliatory termination from a prison job.

     The matter comes before the court on a motion to dismiss
filed by defendant Rohlman (Doc. 28) and a motion for summary
judgment filed by defendants McKune, Winkelbauer, and Sass (Doc.
33).  Having considered the record, the court enters the
following findings and order.

**Background**

During all times relevant to this action, plaintiff was a prisoner in the custody of the Kansas Department of Corrections. Defendant McKune was the Warden at the Lansing Correctional Facility (LCF), defendant Winkelbauer was the Deputy Warden at LCF, and defendant Sass was a Laundry Manager at LCF. Additional facts are incorporated into the discussion of each issue.

**Discussion**

**Standard for granting summary judgment**

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adamson v. Multicommunity Diversified Servs., Inc*., 514 F.3d 1136, 1145 (10th Cir.2008). A material fact is one that could affect the outcome of the suit under governing law; a dispute of fact is genuine where a rational jury could find for the nonmoving party on the evidence presented. *Id.*

The moving party has the burden of demonstrating no genuine issue of material fact exists. *Adamson* at 1145. *Id.* A party may not rely upon unsupported conclusory allegations nor mere scintillae of evidence to establish a material fact on summary judgment. *See Mackenzie v. City and County of Denver,* 414 F.3d

2

1266, 1273 (10th Cir. 2005).  When a moving party has carried the burden under Rule 56(c), the nonmoving party must demonstrate more than "some metaphysical doubt" as to the material facts to avoid summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**Eighth Amendment denial of heat**

Plaintiff claims defendant McKune violated the Eighth Amendment by denying him adequate heat.  He filed a grievance on October 25, 2005, stating:

> There is no heat in these buildings, the windows are not covered, and no long johns have been furnished, you have 72 hours to get the heat on or I'll file for an emergency injunction in federal court.  It is now 29° and we have no heat!  (Doc. 33, Ex. 2, Grievance No. 20060426.)

A member of plaintiff's Unit Team responded on the following day, stating that the Warden and Deputy Warden of Support Services were coordinating the start date for heating for the facility.

On October 28, 2005, defendant McKune responded to the grievance as follows:

> I cannot afford to turn on the heat until it appears that it is going to be consistently cool.  Once we turn on the heat there's no turning it off until the temperature is consistently warm.  Heating bills are predicted to be higher than ever this year and if the heat is turned on too early we will be wasting our

tightly budgeted resources.  I understand that every inmate has been issued two blankets.  (*Id*., Ex. 3.)

The average local temperature in October 2005 was 58.5°. (Doc. 33, Ex. 15.)

The Eighth Amendment guarantees prisoners "humane condi-tions of confinement guided by 'contemporary standards of decency.'"  *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996)(quoting *Estelle v. Gamble,* 429 U .S. 97, 103 (1976)). Thus, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety."  *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998)(citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).  In *Farmer*, the U.S. Supreme Court set out the deliberate indifference standard under the Eighth Amendment that has both an objective and a subjective inquiry.  First, the objective part of the test is met if the harm suffered is "sufficiently serious" to implicate cruel and unusual punish-ment.  511 U.S. at 834.  Next, the subjective component "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer,* 511 U.S. at 837).

Defendants argue the claim does not satisfy the objective

component of the Eighth Amendment analysis because even accepting plaintiff's allegations as true, the deprivation did not cause a denial of minimal necessities. Not only was the overall average temperature approximately 60° during the month in question, it is uncontested that prisoners were provided extra blankets.

Plaintiff's claim of a low temperature must be considered in light of the fact that prison officials supplied additional blankets and the explanation that the facility was concerned with economic constraints and chose to delay turning on the heat until the temperatures were consistently cool. These facts do not suggest any deliberate indifference on the part of defendants; rather, they suggest a prudent management strategy and a reasonable accommodation for cooler temperatures. *Compare Wilson v. Seiter*, 501 U.S. 294, 304 (1991)(conditions of confinement may establish an Eighth Amendment violation in combination where neither would do so alone, as, for example "a low cell temperature at night combined with a failure to issue blankets"). The court concludes the defendants are entitled to summary judgment on this claim.

**Service of spoiled foods**

Plaintiff also asserts an Eighth Amendment claim against defendants Winkelbauer and McKune for serving him spoiled food.

He claims they acted with deliberate indifference to the service of spoiled foods by the contract food service provider. The relevant grievance alleged that prisoners receiving the Kosher diet were routinely served spoiled vegetables, salads, oranges, and turkey sandwiches and were denied bananas. (Doc. 33, Ex.4(b), Grievance AA20060309.) He also claims the foods identified on the Kosher menu were sometimes left off the menu. Staff investigating this grievance determined that there had been neither reports of any food-borne illness among Kosher inmates nor any evidence of spoiled foods.

"Prison officials must ensure that 'inmates receive the basic necessities of [nutritionally] adequate food.'" *Trujillo v. Williams*, 465 F.3d 1210, 1227(10th Cir. 2006)(quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). Again, plaintiff must show both that the deprivation alleged was sufficiently serious, and that the defendant official acted with deliberate indifference to a substantial risk of serious harm. *Barney*, 143 F.3d at 1310. A substantial deprivation of food may violate the Eighth Amendment. *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002).

The plaintiff's generalized claims are not sufficient to allow him to avoid summary judgment. There is no evidence concerning any specific instance of spoiled food, nor is there

6

any evidence that arguably establishes deliberate indifference. Plaintiff has not alleged any personal injury from the food provided, and it appears that many of his grievances concern his preference for other foods. *See e.g.*, Doc. 1, Ex. 1, ¶ 2, Grievance AA20060309, complaining of denial of bananas, ¶ 4, complaining that regular lines receives "macaroni salad, potato salad, bananas, chips" while Kosher diet prisoners receive "carrot salad, cabbage salad, oranges, crackers" and ¶ 6, complaining the Kosher line had not received "watermelon, cantaloupe, tomatoes, peppers, or cucumbers".

Because the record does not support plaintiff's allegation of cruel and unusual punishment regarding the provision of an adequate diet, defendants are entitled to summary judgment on this claim as well.

**Freedom of religion claims**

Plaintiff claims defendants Winkelbauer and McKune violated his First Amendment rights by failing to allow him adequate time for worship. He also claims that defendant Winkelbauer violated his religious rights by serving him spoiled food and by denying him fruits and vegetables.

Plaintiff has a right under the First Amendment to the free exercise of his religion, including the right to attend religious services. However, this right is not absolute.

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 360 (1987).
Rather, the Constitution dictates that "reasonable opportunities
must be afforded to all prisoners to exercise ... religious
freedom." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2 (1972).  Thus,
the occasional failure to accommodate a prisoner's access to
religious services does not violate the Constitution. *Hadi v.
Horn,* 830 F.2d 779, 787-788 (7th Cir. 1987).  *See also Thiry v.
Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996)("the incidental
effects of otherwise lawful government programs which may make
it more difficult to practice certain religions but which have
no tendency to coerce individuals into acting contrary to their
religious beliefs do not constitute substantial burdens on the
exercise of religion.")

Plaintiff alleges defendants Winkelbauer and McKune failed
to provide adequate time for worship and asserts that other
religious callouts receive adequate time.  He filed a grievance
in which he stated that his group, the Assembly of Yahweh (AOY),
met with the Chaplain in early October 2005 to change its call-
out time to Saturday evening.  (Doc. 6, Ex. 6, Grievance
20060422.)

In response, a member of plaintiff's Unit Team stated:

The Assembly of Yahweh primary callout is Saturday
morning from 8:30 am-9:30 am.  Since Saturday is the
Sabbath, they are meeting on that day.  There is no

> space available in the chapel area on Saturday evening
> for any additional callouts.  I have attached a copy
> of the chapel space usage chart for referral.  Please
> note that the Assembly of Yahweh participants also
> have a callout on Tuesday evenings.  (*Id.*)

In the response to the plaintiff's appeal in this griev-

ance, the Secretary's designee provided additional details,

stating, in part:

> We contacted Chaplain Baynes for further details
> regarding this complaint.  We found that the current
> schedule was arrived at with the consent of the
> Assembly of Yahweh callout members.  These inmates now
> claim that they do not have sufficient time for their
> services because officers letting them out for their
> callout do not get the members out for their meeting
> quickly enough.
>
> According to LCF officials, the only room available at
> the chapel on Saturday evenings that is sufficiently
> large for the Assembly of Yahweh callout is currently
> scheduled for the Protestant group.  This time slot
> has been occupied by the Protestant callout for many
> years, and a substantial base of volunteers partici-
> pate in the callout.  Moving the Protestant callout
> could potentially endanger that base of volunteers.
>
> LCF officials have indicated that they would consider
> moving the Assembly of Yahweh callout to another day.
> Strope may make his request through the Chaplain if he
> wishes to pursue this.
>
> LCF officials also indicate that all possible ef-
> forts are being made to get the members of the
> callout to their destination in a timely manner.
> Callout members must cooperate with staff if they
> are to get to their callout on time.  (*Id.*, Ex. 7.)

The record does not support plaintiff's claim.  Even

assuming the plaintiff has sometimes been released late to his

Saturday morning religious callout, such an event does not
result in a substantial burden on his ability to practice his
religion.  There is also a two-hour AOY callout on Tuesday
evenings, and plaintiff has access to religious material in
his cell.

Finally, while plaintiff would prefer a Saturday evening
callout for AOY, the Department of Corrections has provided a
reasonable explanation for scheduling another group in the
available space at that time, as that Protestant group is
supported by a large volunteer base.

There is no evidence that petitioner has been denied a
meaningful opportunity for worship or that defendants
impermissibly burdened a central tenet of his faith.  Defen-
dants are entitled to summary judgment on this claim.

Plaintiff also claims defendants Winkelbauer and McKune
violated his First Amendment rights by providing meals with
spoiled foods to the inmates receiving a Kosher diet and by
failing to provide certain fruits and vegetables.  He claims
prisoners receiving the Kosher diet routinely receive spoiled
carrots, salad, oranges, and turkey sandwiches, and he com-
plains that certain foods are not incorporated into the Kosher
diet plan.

Plaintiff has a right to a diet consistent with his

10

sincerely held religious beliefs.  *Smith v. Bruce*, 568 F.Supp. 2d 1277, 1282 (D. Kan. 2008)(citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).  However, it is "axiomatic that the free exercise clause of the first amendment does not offer its protections to mere personal preferences." *Africa v. State of Pennsylvania*, 520 F.Supp. 967, 971 (E.D. Pa. 1981), *aff'd*, 662 F.2d 1025, *cert. denied*, 456 U.S. 908 (1982).

Plaintiff's claims do not suggest the Kosher diet pro-vided has created a substantial burden on his religious free-dom.  First, there is no evidence that plaintiff suffered any illness as a result of the diet provided, nor is there any documentation concerning a specific instance of spoiled food. Next, as defendants point out, there is no evidence that plaintiff suffered any constitutionally significant impairment to his religious freedom, nor does he allege more than a personal preference for the foods that are not part of the Kosher meal plan.  The defendants are entitled to summary judgment on this claim.

**Retaliatory conduct**

Plaintiff alleges defendant McKune violated his First Amendment rights by conducting an early-morning urine test in retaliation for a lawsuit filed against him by plaintiff.

11

Plaintiff also alleges defendants McKune and Winkelbauer retaliated against him due to his complaints.  Finally, he claims defendant Sass violated his rights under the First Amendment by terminating him from his job in the prison library after he sent a complaint about her to the governor.

*a. The drug testing*

Plaintiff claims defendant McKune violated his First Amendment rights by conspiring to have prisoners awakened in the night for urine testing.  He alleges this conspiracy was retaliatory.

Plaintiff filed a grievance against defendant McKune on October 30, 2005, alleging:

> failure to investigate, abusing federal funding and policy no. IMPP 9-106, since you want to wake me up in the middle of the night for a U.A. to harass me, you'll deal with the flood of paper work, I don't know who you think you are, but you will not violate my rights and you will revise this policy!  These 3 unethical/unfit to hold a public office individuals have violated by first/eighth/fourteenth amendment rights by on-going harassing searches in the middle of the night and conspiracy to retaliate from suing them in federal court!  (Doc. 33, Ex. 10, Grievance No. 20060462.)

Pursuant to Internal Management Policy and Procedure (IMPP) 12-124, all Kansas prisoners in state custody are subject to testing for drugs and alcohol.  The IMPP identifies two means of selection: first, 5% of the inmate population is

12

chosen monthly by a computer for random testing; second, inmates suspected of drug or alcohol use also may be tested.

Plaintiff was tested on October 19, 2005, pursuant to his selection at random. The majority of such drug testing is conducted in the early morning, and testing is done at that time to avoid interference with inmate work and meal times, to collect samples quickly, to collect strong samples, and to use available staff time. (Doc. 33, Ex. 16, Affid. of Ron Baker.)

Prison officials may not retaliate against a prisoner because of the prisoner's exercise of his constitutional rights. *Fogle v. Pierson,* 435 F.3d 1252, 1263-64 (10th Cir.)(quotation omitted), *cert. denied,* 549 U.S. 1059 (2006). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). Despite this, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

To state a claim for retaliation, a prisoner must plead specific facts to show that he was engaged in a constitution-ally protected activity, that the adverse actions by prison officials would deter a person of ordinary firmness from the

13

exercise of constitutional rights, and that defendants' ac-
tions were substantially motivated by the plaintiff's pro-
tected activity.  *Shero v. City of Grove, Okl.,* 510 F.3d 1196,
1203 (10th Cir. 2007).  A plaintiff "must prove that 'but for'
the retaliatory motive, the incidents to which he refers ...
would not have taken place."  *Peterson v. Shanks,* 149 F.3d
1140, 1144 (10th Cir. 1998).

The record does not support plaintiff's claim of retalia-
tion.  First, the performance of a drug test appears to be
entirely routine.  Plaintiff was selected at random and was
awakened in the early morning to submit a urine specimen
pursuant to standard procedure.  The record contains a
reasonable explanation for performing the test in the early
hours, and case law suggests that other facilities have a
similar practice.  *See Whitman v. Nesic,* 368 F.3d 931, 392 (7th
Cir. 2004)(noting prison drug tests were conducted by officers
on the third shift, 10:30 p.m. to 6:30 a.m.) and *Williams v.
Nelson*, 2004 WL 2830666, *6 (W.D. Wis. 2004)(finding no viola-
tion where patients detained under state Sexually Violent
Persons Law awakened "at four or five o'clock in the morning,
well before they would normally be awake").

Next, plaintiff fails to identify with particularity any
claim he advanced against defendant McKune or how that act

14

resulted in the policy that is now alleged to be retaliatory.
There is simply no evidence of any kind that "but for" a
retaliatory motive, the drug test would not have been per-
formed in the early morning.  The record does not support a
claim of retaliatory conduct, and defendant is entitled to
summary judgment.

*b. Claim of harassment*

Plaintiff claims defendants McKune and Winkelbauer sub-
jected him to harassment and retaliation for pursuing reme-
dies.  He filed a grievance on September 11, 2005, stating, in
part,

> Here it is the end of summer and we have not re-
> ceived any watermelon, cantaloupe, tomatoes, pep-
> pers, or cucumbers, you can not serve a proper and
> balanced diet without fruits and vegetables, this is
> completely vindictive and malicious, especially
> seeing that there is a garden here, this clearly
> illustrates the lack of effective management for
> koshers, furthermore, prisoners who file
> complaints/grievances/letters to the government and
> federal agencies are targeted with harassment and
> retaliation, which is also illegal and further vio-
> lates the first, eighth, and fourteenth amendments.
> (Doc. 33, Ex. 4(c), Grievance AA20060309.)

Defendants contend plaintiff has failed to identify any
retaliation against him personally or to provide any specific
information concerning the complaints against defendants that
allegedly resulted in retaliation.

"[M]ere allegations of constitutional retaliation will

15

not suffice; [the plaintiff] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *See Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  The plaintiff's broad allegation is insufficient to withstand the defendants' motion, and defendants are entitled to summary judgment on this claim.

*c. Removal from prison laundry job*

    Plaintiff claims defendant Sass removed him from his job in the prison laundry after he filed a grievance against her and complained about her in a letter to the Governor.

    Plaintiff alleges on February 7, 2005, he sent a complaint to defendant Winkelbauer concerning unfair treatment in the prison laundry where he was employed.  He did not receive a response.  He broadly alleges that thereafter, he began to receive worse treatment from defendant Sass and Correctional Officer Clary.

    He also alleges that on March 30, 2005, he gave to his Unit Team Manager a registered mailing containing a complaint to the Governor concerning defendants Winkelbauer and Sass and Officer Clary.  Plaintiff claims that a few minutes later, defendant Sass became belligerent with him and ordered him out of the laundry.

    Defendants contend plaintiff fails to establish that he

16

complained about defendant Sass or that she knew of any such complaint.  They point out plaintiff has not provided a copy of either the grievance or the letter to the Governor, and they argue he has failed to provide any evidence of either his exercise of a protected right or of any retaliatory motive by defendant Sass.

Defendants also argue there is no evidence that the removal of plaintiff from his prison job was retaliatory.  The affidavit prepared by defendant Sass states that plaintiff asked for a lay-in from his job in the laundry because he felt unsafe there.  Defendant Sass denies she ordered plaintiff out of the laundry and states she did not fire him.  Had a firing occurred, Sass states she would have prepared a discipline report, and she did not do so.  (Doc. 24, Ex. K., Affid. of defendant Sass).

In his response, plaintiff contends he was fired from the laundry for voicing his complaints and that there is no reason for his firing except his exercise of free speech.  He pro-vides a copy of a receipt for mailing the letter to the Gover-nor and copies of grievances and letters.  However, as defen-dants point out, the grievance and letters plaintiff submits were all prepared after his removal from the laundry, and the receipt plaintiff offers establishes neither the content of

17

the letter to the Governor nor any reason that defendant Sass
would have known of its contents.  The court concludes there
is insufficient evidence to withstand the motion for summary
judgment.

**Fourteenth Amendment claims**

Plaintiff asserts claims under the Fourteen Amendment,
alleging defendants Winkelbauer and McKune subjected him to
unlawful disparity in treatment.  The relevant grievance cites
his complaint that inmates on the regular diet line receive
such items as macaroni salad, potato salad, and chips while
the Kosher diet receives carrot salad, cabbage salad, and
crackers.  (Doc. 6, p. 6 and Ex. 1, Grievance AA20060309.)  He
also claims defendant Winkelbauer violated his rights by
denying inmates on the Kosher diet line fruit and vegetables.
(Id., p. 7 and Ex. 14, Grievance AA20060250.)

He next claims defendant Winkelbauer violated his rights
under the Fourteenth Amendment by denying adequate time for
worship while all other religious callouts receive plenty of
time.  (*Id.*, p. 5.)

Finally, he claims defendant Sass violated his Fourteenth
Amendment rights by terminating him from a job in the prison
laundry and by requesting a shakedown search of the area
shortly after he left the area.  He alleges the search was an

18

attempt to place him in danger from other prisoners.  (*Id.*, p. 7.)

The equal protection clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."  Equal protection "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Thus, to establish such a violation, plaintiff must show both that he is a member of a protected class and that he was treated differently than those similarly situated.  *See Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

Plaintiff's claim regarding the food items offered to the prisoners receiving the regular-line diet as opposed to his Kosher-line diet fails because the groups are not similarly situated.  Plaintiff's desire for other foods does not warrant extended discussion.  There is no evidence that suggests the Kosher diet did not provide adequate nutrition or that any unlawful motive entered into the development of that diet. Defendants are entitled to summary judgment on this claim.

Plaintiff's claim against defendant Winkelbauer alleging that other callouts receive adequate time while his callout does not likewise is unsupported.  While prison authorities

19

must provide a prisoner a reasonable opportunity for religious exercise that is comparable to that received by other prisoners, they need not receive identical opportunities for worship. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).  The record demonstrates plaintiff receives regular opportunities for congregate worship that are comparable to those available to other, similarly-situated prisoners.  Defendant Winkelbauer is entitled to summary judgment on this claim.

Plaintiff's claims against defendant Sass allege "discrimination, unequal protection of the laws, conspiracy to retaliate, and reverse discrimination, by terminating plaintiff from job and attempting to place in danger" (Doc. 7, p. 7.)  However, as discussed above, because there is no evidence to support these general claims of conspiracy and discrimination, defendant Sass is entitled to summary judgment.

**Claim under RLUIPA**

Plaintiff also seeks relief under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) (RLUIPA), alleging defendant Winkelbauer failed to ensure that he received adequate time for worship.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the govern-

ment demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling government interest." 42 U.S.C. §2000cc-1(a).  To advance a claim under the RLUIPA, plaintiff must demonstrate that the defendants have placed a substantial burden on his religious exercise.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  A substantial burden is one that "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)(quoting *Thomas v. Review Board of Ind. Empl. Sec. Divs.*, 450 U.S. 707, 718 (1981)).

Plaintiff's claim that authorities have sometimes failed to release him for religious callout in a timely manner does not establish that he suffered a substantial burden as defined by the RLUIPA.  Defendant Winkelbauer is entitled to summary judgment on this claim.

**Motion to dismiss by defendant Rohlman**

Plaintiff alleges defendant Rohlman, an employee of Aramark, violated his rights under the First and Fourteenth Amendments by religious discrimination and persecution, and by disparity in treatment.  Plaintiff claims defendant Rohlman denied him fruits and vegetables and used abusive language.

21

(Doc. 6, p. 7.)

Plaintiff filed two grievances against defendant Rohlman on September 5, 2005, which state, in relevant part:

> Today at lunch 9/5/05 prisoners on kosher diets were given a sour'd turkey sandwich that appeared to be left out in the heat for a long time, as it was completely warm and smelled.  This is intentional conduct and deprives us of a balanced diet and violates the 8th. amendment as it imposes severe health risks.  (Doc. 6, Ex. 9, Grievance AA20060282.)

> Today at lunch 9/5/05 regular line had watermelon and tomatoes, koshers were denied these fruits & vegs., and have been all summer, you will get grievances daily now since you want to intentionally violate my right, when i went up to talk to [Rohlman] he ...told me too ...bad, your costing us more money then your worth now.... (Id., Ex. 14, Grievance AA20060256.)

The response to the first grievance shows the sandwiches were warmed for service in order to keep the bread pliable, and that no other inmate receiving the Kosher menu complained of sourness.  (Id., Ex. 9.)  The response to the second grievance shows the food service contract does not entitle inmates receiving the Kosher diet to any specific foods.  Some foods, such as the watermelon served on September 5, was not deemed Kosher and inmates were so advised and allowed to decide whether to consume it.  (Id., Ex. 14.)

As previously discussed, a prisoner has a right to a diet

that is consistent with his sincerely-held religious beliefs. *Smith v. Bruce*, 568 F.Supp.2d 1277, 1282 (D. Kan. 2008). However, a prisoner has no right to dictate to prison authorities the foods that he prefers.  The record does not suggest the plaintiff was denied an adequate diet compatible with his religious beliefs.

Next, even assuming defendant Rohlman was verbally abusive to the plaintiff, such conduct does not implicate a constitutional right.  *See McBride v. Deer,* 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001)("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Abeyta v. Chama Valley Independent School Dist. No. 19,* 77 F.3d 1253, 1256 (10th Cir. 1996)("even extreme verbal abuse is insufficient to establish a constitutional violation").

Accordingly, having considered the record, the court grants the motion of defendant Rohlman for dismissal.

**Conduct of pro se litigants**

Plaintiff proceeds pro se in this matter, and his pleadings are entitled to a liberal construction.  However, a party proceeding pro se must conduct his litigation with the same respect and courtesy this court requires of attorneys.  *Lopez v. U.S.*, 133 F.Supp.2d 1231 (D.N.M. 2000).  *See also Garrett*

23

*v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir.2005)(the Tenth Circuit "has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants.")

The court notes plaintiff has misspelled the name of a law firm involved in this action by substituting "Stench" for "Sterchi" (Doc. 38, p. 3.)  The court now advises plaintiff that further examples of such conduct may result in sanctions.

## Conclusion

For the reasons set forth herein, the court concludes the Kansas Department of Corrections defendants are entitled to summary judgment and that defendant Rohlman is entitled to dismissal.

IT IS, THEREFORE, BY THE COURT ORDERED the motion to dismiss of defendant Rohlman (Doc. 28) is granted.

IT IS FURTHER ORDERED the motion for summary judgment of defendants McKune, Sass, and Winkelbauer (Doc. 32) is granted.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED**.

Dated at Topeka, Kansas, this 22nd day of September, 2009.


                         S/ Sam A. Crow
                         SAM A. CROW
                         United States Senior District Judge